**No. 25-12005-DD**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**
***Plaintiff/Appellee*,**

**v.**

**MICHAEL GEILENFELD,**
***Defendant/Appellant*.**

---

**On Appeal from the United States District Court**
**for the Southern District of Florida**

---

# INITIAL BRIEF OF APPELLANT MICHAEL GEILENFELD

---


**HECTOR A. DOPICO**
**Federal Public Defender**
**MICHAEL CARUSO**
**Assistant Federal Public Defender**
**Attorney for Appellant**
**150 West Flagler Street, Suite 1700**
**Miami, Florida 33130**
**Telephone No. (305) 533-4200**


**THIS CASE IS ENTITLED TO PREFERENCE**
**(CRIMINAL CASE)**

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

## UNITED STATES V. MICHAEL GEILENFELD

## CASE NO. 25-12005-DD

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Becerra, Hon. Jaqueline

Caruso, Michael

Davis, Michael S.

Dopico, Hector A.

Doty, George, III

Fernandez, Bertila

Forand, Peter

Geilenfeld, Michael Karl

Gilbert, Jean-Pierre

Goodman, Hon. Jonathan

Houlihan, Raymond D'Arsey, III

Leibowitz, Hon. David S.

Levin, Albert Zachary

Matzkin, Daniel

Minor Victims

Monk, Lacee Elizabeth

O'Byrne, Hayden P.

Palomo, Eduardo Alberto

Reding Quiñones, Jason A.

Reid, Hon. Lisette M.

Sanchez, Hon. Eduardo I.

United States of America

Urban, Jessica L.

Vasquez, Ignacio

Waxman, Abbie

Williams, Dwayne

Williams, Hon. Kathleen M.

*/s/ Michael Caruso*
Michael Caruso

## STATEMENT REGARDING ORAL ARGUMENT

Geilenfeld respectfully submits that oral argument is necessary because this appeal presents an important question of statutory interpretation—whether the pre-2013 version of 18 U.S.C. § 2423(c) reached the in-country conduct of a U.S. citizen who had resided abroad for decades. His appeal also presents a substantial jury-unanimity question under *United States v. Pulido*, 133 F.4th 1256 (11th Cir. 2025).

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........ C-1

STATEMENT REGARDING ORAL ARGUMENT ........ i

TABLE OF CONTENTS ........ ii

TABLE OF CITATIONS ........ viii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 3

Course of Proceedings and Disposition in the District Court ........ 3

Statement of Facts ........ 4

Standards of Review ........ 19

SUMMARY OF THE ARGUMENT ........ 21

ARGUMENT AND CITATIONS OF AUTHORITY ........ 24

I. The Pre-2013 Version of 18 U.S.C. § 2423(c) Punished Illicit Sexual Conduct Only by a Citizen Who Was Traveling in Foreign Commerce. The Government Proved Two Decades of

Residence in Haiti and Tied No Charged Act to Any Travel; Counts 2–7 Require Judgments of Acquittal. In The Alternative, The Instruction Defining "Traveling in Foreign Commerce" as a Completed Border Crossing Erased the Statute's Temporal Element and Requires a New Trial on Counts 2–7. .......... 24

A. Section 2423(c)'s Plain Text Requires that the Illicit Conduct Occur While the Defendant is Traveling; a Citizen Who Has Permanently Settled Abroad Is Residing, Not Traveling .......... 25

B. The 2013 Amendment Confirms the Temporal Limit; Reading "Travels" to Reach Permanent Residents Would Render the New "Resides" Clause Surplusage .......... 28

C. In Addition to *Pepe I*, This Court's Decision in *Frank* and Out-Of-Circuit Cases Support Geilenfeld's Reading of § 2423(c) .......... 30

D. Geilenfeld's Trips Home to Haiti Did Not "Refresh" the Element—and the Government Tied No Charged Act to Any Trip ........ 34

E. A Broader Reading of § 2423(c) Raises a Serious Foreign Commerce Clause Question—as Applied to a Permanent Resident—That the Temporal Reading Avoids ........ 35

F. Any Residual Ambiguity Is Resolved in Geilenfeld's Favor by the Rule of Lenity ........ 37

G. The Undisputed Evidence Established That Geilenfeld Was a Resident, Not a Traveler, and This Court Should Render Judgments of Acquittal on Counts 2–7 ........ 37

H. In The Alternative, the District Court's Erroneous Instruction on the Traveling Element Independently Requires a New Trial on Counts 2–7 ........ 40

II. The District Court Plainly Erred by Giving Only a General Unanimity Instruction—Rather Than a Specific Unanimity Instruction or a Required Government Election—Where Count 1 Charged a Single § 2423(B) Offense but The

Government Proved Eighteen Separate, Independently Completed Border Crossings, Permitting Conviction Without Juror Agreement on Which Crossing Was the Crime. .................. 44

A. The Claim Arises from the Government's Trial Presentation, Not the Indictment, and Is Reviewed for Plain Error ........................................................................ 45

B. Each Act of Travel Undertaken with an Illicit Purpose Is a Complete, Separate § 2423(b) Offense ........................... 46

C. The Government Proved Eighteen Discrete Trips and Argued Them in the Aggregate as a "Decades-Long Project" ......................................................................... 48

D. Under *Pulido*, a General Unanimity Instruction Cannot Secure Agreement on Which of Several Completed Offenses Was the Crime; The Required Cure—A Specific Unanimity Instruction or a Government Election—Was Never Administered ............................................................ 48

E. The Government's Undifferentiated Presentation and The Court's General Instruction Deprived Geilenfeld of Jury Unanimity .......... 52

F. The Error Was Plain, There Is a Reasonable Probability that no Single Trip Commanded Twelve Votes, and Affirming a Conviction for an Unidentified Offense Would Undermine the Fairness and Integrity of the Proceedings .......... 55

III. In a Trial That Turned Entirely on Credibility, the District Court's Evidentiary Rulings—Compelling Geilenfeld to Call His Accusers Liars, Admitting a Bystander's Belief That the Accusations "Could Be True," and Admitting an Unconfronted Secondhand Accusation—Denied Geilenfeld a Fair Trial, Individually and Cumulatively .......... 58

A. The Prosecutor's Demand That Geilenfeld Brand His Accusers Fabricators Violated *Schmitz* .......... 59

B. Christine Low's Opinion That the Accusations "Could Be True" Was Inadmissible Lay Speculation That Vouched for The Government's Witnesses ........ 62

C. The Court Admitted the "Kitchen Kiss" Accusation Under Hearsay Exceptions That Do Not Fit ........ 64

D. The Cumulative Effect of these Rulings Denied Geilenfeld a Fair Trial ........ 67

CONCLUSION ........ 72

CERTIFICATE OF COMPLIANCE ........ 73

CERTIFICATE OF SERVICE ........ 74

## TABLE OF CITATIONS

**CASES** **PAGE(S)**

*Bonner v. City of Prichard*,

661 F.2d 1206 (11th Cir. 1981) (*en banc*) ............................................46

*Burks v. United States*,

437 U.S. 1 (1978)...........................................................................................40

*Carr v. United States*,

560 U.S. 438 (2010)........................................................................................26

*Davis v. Washington*,

547 U.S. 813 (2006)........................................................................................20

*FCC v. Fox Television Stations, Inc.*,

556 U.S. 502 (2009)........................................................................................35

*Garcia v. Vanguard Car Rental USA, Inc.*,

540 F.3d 1242 (11th Cir. 2008) ....................................................................30

*Henderson v. United States*,

568 U.S. 266 (2013)..................................................55, 60, 61, 63–64

*Heyman v. Cooper*,

31 F.4th 1315 (11th Cir. 2022).....................................................................28

*In re Gomez*,

830 F.3d 1225 (11th Cir. 2016) ............................................. 47, 56–57

*Jackson v. Virginia*,

443 U.S. 307 (1979) ............................................................. 38, 39

*Kotteakos v. United States*,

328 U.S. 750 (1946) ................................................ 20, 61–62, 64, 67, 72

*Morris v. Sec'y, Dep't of Corr.*,

677 F.3d 1117 (11th Cir. 2012) ........................................................ 68

*Neder v. United States*,

527 U.S. 1 (1999) ................................................................ 41, 42

*Pierce Cnty. v. Guillen*,

537 U.S. 129 (2003) .................................................................... 29

*Polycarpe v. E&S Landscaping Serv., Inc.*,

616 F.3d 1217 (11th Cir. 2010) ..................................................... 26–27

*Pulsifer v. United States*,

601 U.S. 124 (2024) .................................................................... 28

*Ramos v. Louisiana*,

590 U.S. 83 (2020) ...................................................................... 58

*Richardson v. United States*,

526 U.S. 813 (1999)........................................................................50

*Rosales-Mireles v. United States*,

585 U.S. 129 (2018)....................................................................43, 58

*Schad v. Arizona*,

501 U.S. 624 (1991)........................................................................50

*Toussie v. United States*,

397 U.S. 112 (1970)....................................................................50–51

*TRW Inc. v. Andrews*,

534 U.S. 19 (2001)......................................................................28, 34

*United States v. Al-Maliki*,

787 F.3d 784 (6th Cir. 2015) .............................................................36

*United States v. Augustin*,

661 F.3d 1105 (11th Cir. 2011) ..........................................................19

*United States v. Baker*,

432 F.3d 1189 (11th Cir. 2005) ..............................................20, 67–68

*United States v. Bredimus*,

352 F.3d 200 (5th Cir. 2003) .............................................................47

*United States v. Cannon*,

987 F.3d 924 (11th Cir. 2021) ....................................................56, 57

*United States v. Carter*,

776 F.3d 1309 (11th Cir. 2015) ............................................44, 47, 50

*United States v. Clark*,

435 F.3d 1100 (9th Cir. 2006) ....................................................32, 36

*United States v. Day*,

No. 22-11718, 2023 WL 3946830 (11th Cir. June 12, 2023)..31, 32, 47

*United States v. Deason*,

965 F.3d 1252 (11th Cir. 2020) ..................................................19, 56

*United States v. Dominguez*,

661 F.3d 1051 (11th Cir. 2011) ........................................................19

*United States v. Frank*,

599 F.3d 1221 (11th Cir. 2010) ..................................................30, 31

*United States v. Gipson*,

553 F.2d 453 (5th Cir. 1977) ..........................................45, 46, 55, 56

*United States v. Glenn*,

839 F. App'x 376 (11th Cir. 2020) ....................................................47

*United States v. Hands*,

184 F.3d 1322 (11th Cir. 1999) ........................................................68

*United States v. Henderson*,

409 F.3d 1293 (11th Cir. 2005) ..............................................60, 62, 63

*United States v. Hersh*,

297 F.3d 1233 (11th Cir. 2002) ..........................................................47

*United States v. Hicks*,

529 F.2d 841 (5th Cir. 1976) ..................................................45, 54–55

*United States v. Jackson*,

480 F.3d 1014 (9th Cir. 2007) .....................................32, 34, 35, 38, 39

*United States v. Lapier*,

796 F.3d 1090 (9th Cir. 2015) ............................................................55

*United States v. Lejarde-Rada*,

319 F.3d 1288 (11th Cir. 2003) ..........................................................41

*United States v. Olano*,

507 U.S. 725 (1993)..............................................................19, 20, 41

*United States v. Pate*,

84 F.4th 1196 (11th Cir. 2023)...........................................................27

*United States v. Pendleton*,

658 F.3d 299 (3d Cir. 2011)..........................................................33, 47

*United States v. Pepe (Pepe II)*,

81 F.4th 961 (9th Cir. 2023)....................................................................27

**United States v. Pepe (Pepe I)*,

895 F.3d 679 (9th Cir. 2018) ...........................27, 30, 32–33, 35–38, 40

**United States v. Pulido*,

133 F.4th 1256 (11th Cir. 2025)..........................i, 22, 35–36, 46, 48–58

*United States v. Santos*,

553 U.S. 507 (2008)...........................................................................37

**United States v. Schlei*,

122 F.3d 944 (11th Cir. 1997) ..............................................47, 51, 54

*United States v. Schmidt*,

845 F.3d 153 (4th Cir. 2017) .......................................................33, 34

**United States v. Schmitz*,

634 F.3d 1247 (11th Cir. 2011) ........................................23, 59, 60–62

*United States v. Smith*,

459 F.3d 1276 (11th Cir. 2006) ...........................................................70

*United States v. Starr*,

159 F.4th 901 (11th Cir. 2025)............................................................66

**STATUTES**

1 U.S.C. § 1 ...........................................................................................26

18 U.S.C. § 2250(a) .......... 26
18 U.S.C. § 2422(b) .......... 48
18 U.S.C. § 2423 .......... 3, 35
18 U.S.C. § 2423(b) .......... 2, 3, 22, 31, 36, 44–48, 51, 55, 57
18 U.S.C. § 2423(c) .......... 2, 3, 21, 24, 25, 27, 28, 30–33, 35, 36, 37, 41
18 U.S.C. § 3231 .......... 1
18 U.S.C. § 3742 .......... 1
28 U.S.C. § 1291 .......... 1

**RULES**

Fed. R. Crim. P. 30(d) .......... 19
Fed. R. Crim. P. 52(b) .......... 19
Fed. R. Evid. 103(a)(1)(B) .......... 60
Fed. R. Evid. 103(e) .......... 20
Fed. R. Evid. 401 .......... 63
Fed. R. Evid. 403 .......... 63
Fed. R. Evid. 602 .......... 62, 70
Fed. R. Evid. 608(a) .......... 63
Fed. R. Evid. 701 .......... 63
Fed. R. Evid. 803(1) .......... 65
Fed. R. Evid. 803(2) .......... 65

**OTHER AUTHORITIES**

S. Rep. No. 112-96 ........................................................................ 30

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. VI ........................................................................ 58

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231 because Geilenfeld was charged with federal offenses. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The notice of appeal was timely filed on June 10, 2025 (DE165), from the final judgment entered on May 27, 2025 (DE163).

## STATEMENT OF THE ISSUES

I. Whether the pre-2013 version of 18 U.S.C. § 2423(c) reached Geilenfeld's in-country conduct where the undisputed evidence showed he had resided permanently in Haiti for two decades and the government did not tie any charged act to any particular travel. Alternatively, whether the court's final jury instruction defining "traveling in foreign commerce" as nothing more than crossing a border requires a new trial on Counts 2–7.

II. Whether the district court plainly erred by giving only a general unanimity instruction—rather than a specific unanimity instruction or a required government election—where Count 1 charged a single § 2423(b) offense but the government proved eighteen separate, independently completed border crossings, permitting conviction without juror agreement on which crossing was the crime.

III. Whether the district court's evidentiary rulings, individually and cumulatively, deprived Geilenfeld of a fair trial in a prosecution

decided entirely on witness credibility and without physical evidence.

## STATEMENT OF THE CASE

Michael Geilenfeld ("Geilenfeld") was the defendant below. The appellee is the United States ("the government"). Record citations follow the convention: document number, then page.

## COURSE OF PROCEEDINGS AND DISPOSITION IN THE DISTRICT COURT

A federal grand jury charged Geilenfeld with two types of offenses under 18 U.S.C. § 2423. (DE56). Count 1 charged him under § 2423(b) with traveling, from May 2005 to December 2010, in foreign commerce—from Miami to Haiti—for the purpose of engaging in illicit sexual conduct. (DE56). Counts 2–7 charged him under § 2423(c) with traveling in foreign commerce—from Miami to Haiti—and engaging in illicit sexual conduct; each § 2423(c) count alleged a specific victim and date range. (DE56). Counts 2–7 correspond to the six complaining witnesses summarized at Statement of Facts § V.A–F; the witnesses in §§ V.G–K testified only under Federal Rules of Evidence 413, 414 or 404(b) and are not the subject of any count.

After trial, the jury convicted Geilenfeld on all counts. (DE132). The district court sentenced him to 210 years and ordered $25,000 in restitution. (DE163, 181). This appeal followed. (DE165).

## STATEMENT OF FACTS

### I. THE MISSION AND GEILENFELD'S ROLE

[redacted]

[redacted]

[redacted]

[redacted]

## II. THE INVESTIGATION'S ORIGINS AND GOVERNMENT WITNESS IDENTIFICATION

[redacted]

## III. NON-GOVERNMENTAL ACTORS—WITNESS SUPPORT AND INCENTIVES

### A. DIRKSEN'S SUPPORT NETWORK AND FINANCIAL RELATIONSHIPS

[redacted]

[redacted]

[redacted]

### B. IMMIGRATION INCENTIVES AND GOVERNMENT AWARENESS

[redacted]

## III. CHRISTINE LOW—THE RULE 404(B) FOUNDATION

[redacted]

[redacted]

[redacted]

## IV. THE ALLEGED VICTIMS AND THEIR ACCOUNTS

### A. [redacted] (COUNT 2)

[redacted]

[redacted]

[redacted]

[redacted]

**B. [redacted] (COUNT 3)**

[redacted]

**C. [redacted] (COUNT 4)**

[redacted]

[redacted]

**D. [redacted] (COUNT 5)**

[redacted]

**E. [redacted] (COUNT 6)**

[redacted]

[redacted]

[redacted]

[redacted]

F. [redacted] (COUNT 7)

[redacted]

[redacted]

[redacted]

G. [redacted]—RULE 413/414 WITNESS

[redacted]

[redacted]

H. [redacted]—RULE 413/414 WITNESS

[redacted]

masturbating them. (DE195:39). Outside of this episode, [redacted] said that [redacted]

I. [redacted]—RULE 413/414 WITNESS

[redacted]

[redacted]

J. [redacted]—RULE 413/414 WITNESS

[redacted]

[redacted]

### K. [redacted]—RULE 404(B) WITNESS

[redacted]

## VI. THE [redacted] "KITCHEN KISS" EVIDENCE

[redacted]

## VII. THE DEFENSE CASE

[redacted]

[redacted]

## VIII. GEILENFELD'S TESTIMONY

[redacted]

[redacted]

## IX. EXPERT TESTIMONY

[redacted]

## STANDARDS OF REVIEW

Because Geilenfeld preserved his sufficiency challenge by moving for a judgment of acquittal, which the district court denied, (DE195:128), this Court reviews his challenge *de novo*. *United States v. Dominguez*, 661 F.3d 1051, 1061 (11th Cir. 2011). Although a jury instruction's legal correctness is reviewed *de novo*, the absence of a contemporaneous objection means this Court applies plain-error review under Federal Rule of Criminal Procedure 52(b). *United States v. Olano*, 507 U.S. 725, 732 (1993).

Whether an indictment count is duplicitous is a question of law reviewed *de novo*, but because Geilenfeld neither requested a specific unanimity instruction nor objected to the general charge, this Court reviews the instructional omission for plain error. *See United States v. Deason*, 965 F.3d 1252, 1267–68 (11th Cir. 2020) (reviewing an unpreserved duplicity-based unanimity challenge for plain error); Fed. R. Crim. P. 30(d).

A district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Augustin*, 661 F.3d 1105, 1123 (11th Cir. 2011). Non-constitutional evidentiary errors are reviewed for

harmlessness under the substantial-influence standard. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

Unpreserved evidentiary claims are reviewed for plain error. Fed. R. Evid. 103(e); *Olano*, 507 U.S. at 732–34. Whether the cumulative effect of multiple errors deprived the defendant of a fundamentally fair trial is assessed in light of the trial as a whole. *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005), *abrogated on other grounds* by *Davis v. Washington*, 547 U.S. 813 (2006).

## SUMMARY OF THE ARGUMENT

Geilenfeld's convictions on Counts 2–7 cannot stand because the government failed to prove that he was traveling in foreign commerce when the charged conduct occurred—an element of 18 U.S.C. § 2423(c) (2006). The pre-2013 § 2423(c) reached only a citizen who "travels in foreign commerce[] *and* engages" in illicit sexual conduct—present-tense, conjoined verbs requiring that the conduct occur while the travel is ongoing. *Id.* (emphasis added). Congress confirmed as much in 2013 by amending § 2423(c) to add citizens who "reside[], either temporarily or permanently," abroad—an addition that would do no work if "travels" already reached permanent residents.

[redacted] and no rational juror could find otherwise. Because that failure is one of proof, the Double Jeopardy Clause bars retrial, and this Court should direct entry of judgments of acquittal on Counts 2–7. Alternatively, even if the evidence sufficed, the district court's instruction defining "traveling in foreign commerce" as a

mere border crossing eliminated the statute's temporal element—plain error requiring a new trial on Counts 2–7.

Count 1 facially charged a single 18 U.S.C. § 2423(b) offense; Geilenfeld raises no charging defect. Section 2423(b) criminalizes each discrete act of travel undertaken with an illicit purpose, and the offense is complete the instant qualifying travel occurs. [redacted]—each an independently complete offense made with the requisite intent—[redacted] under only a general unanimity instruction. Combined with an instruction that the illicit purpose need be only one of several motives for travel, that presentation converted Count 1 from a charge about an act of travel into a charge about a course of conduct.

Under *United States v. Pulido*, a general unanimity instruction does not secure juror agreement on which of several discrete acts was the offense. The court's failure to give a specific unanimity instruction—or require a government election—left an intolerable risk that the jury convicted without agreeing on which trip was the crime. That omission

was plain error, and this Court should vacate the conviction on Count 1 and remand for a new trial.

This was a credibility case tried without physical evidence, and several of the district court's evidentiary rulings erroneously tilted the credibility contest toward the government. [redacted] in violation of *United States v. Schmitz*; [redacted] and admitted an unconfronted hearsay accusation under exceptions that do not fit. Each ruling was an abuse of discretion, and the government cannot show the errors were harmless. Individually and cumulatively, they denied Geilenfeld the fair trial the Constitution guarantees and require a new trial.

## ARGUMENT AND CITATIONS OF AUTHORITY

### ISSUE I

**THE PRE-2013 VERSION OF 18 U.S.C. § 2423(C) PUNISHED ILLICIT SEXUAL CONDUCT ONLY BY A CITIZEN WHO WAS TRAVELING IN FOREIGN COMMERCE. THE GOVERNMENT PROVED GEILENFELD'S TWO DECADES OF RESIDENCE IN HAITI AND TIED NO CHARGED ACT TO ANY TRAVEL; COUNTS 2–7 REQUIRE JUDGMENTS OF ACQUITTAL. IN THE ALTERNATIVE, THE INSTRUCTION DEFINING "TRAVELING IN FOREIGN COMMERCE" AS A COMPLETED BORDER CROSSING ERASED THE STATUTE'S TEMPORAL ELEMENT AND REQUIRES A NEW TRIAL ON COUNTS 2–7.**

Counts 2–7 fail for a single reason—the undisputed evidence showed that during the relevant time, [redacted] The pre-2013 version of § 2423(c), the operative statute, reached only a U.S. citizen "who *travels* in foreign commerce, *and engages* in any illicit sexual conduct." 18 U.S.C. § 2423(c) (2006) (emphases added). The statute's text, confirmed by a 2013 amendment and Congress's contemporaneous explanation, establishes that "travels . . . and engages" reaches only illicit conduct committed

while a U.S. citizen is still traveling—not conduct committed by a citizen who ceased traveling decades earlier and settled abroad.

[redacted] Geilenfeld did not violate § 2423(c), and he is entitled to judgments of acquittal on Counts 2–7. In the alternative, even if the Court deems the evidence sufficient, the district court plainly erred by failing to instruct the jury to apply the temporal element required by § 2423(c)'s text.

### A. SECTION 2423(C)'S PLAIN TEXT REQUIRES THAT THE ILLICIT CONDUCT OCCUR WHILE THE DEFENDANT IS TRAVELING; A CITIZEN WHO HAS PERMANENTLY SETTLED ABROAD IS RESIDING, NOT TRAVELING.

In § 2423(c), Congress used the present tense twice—"travels" and "engages"—and joined the two with "and." That construction describes activities that occur together. Congress did not write "has traveled" or "has at any time traveled"; it chose "travels"—ongoing activity—tied to

conduct in which the citizen "engages." The natural reading is that the illicit conduct must occur *while* the travel is ongoing.

The Supreme Court has read the same verb the same way. In *Carr v. United States*, 560 U.S. 438 (2010), the Court construed 18 U.S.C. § 2250(a), which reaches a sex offender who "travels" in interstate or foreign commerce, and held that the present-tense verb does not reach travel already completed. *Id.* at 448–50. The Court relied in part on the Dictionary Act's provision that words "used in the present tense include the future as well as the present," 1 U.S.C. § 1, implying "that the present tense generally does not include the past." *Id.* at 448.

The everyday meaning of "travel" corroborates this point. To travel is "to go from one place to another as on a trip" and "to go from place to place." *Travel*, The American Heritage Dictionary of the English Language 1904 (3d ed. 1992). A U.S. citizen who has moved abroad, built a life there, and remained for decades is not "going from place to place." He is living there. The distinction between traveler and resident is a basic fact of ordinary speech Congress wrote into the statute's text. *See Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1223 (11th Cir.

2010) (recognizing courts "assume that Congress uses words in a statute as they are commonly understood.").

In *United States v. Pepe*, 895 F.3d 679 (9th Cir. 2018) (*Pepe I*), the Ninth Circuit read the pre-2013 statute exactly this way, holding that "a conviction under § 2423(c), when based on a defendant's travel in foreign commerce, requires proof that the illicit sexual conduct occurred while the defendant was traveling." *Id.* at 691. The court explained that the pre-2013 statute "did not target all U.S. citizens who traveled overseas and committed sex crimes with minors—*only those who resided in the United States*." *Id.* at 687 (emphasis added). On remand, the government abandoned § 2423(c) altogether, re-charging Pepe under other statutes. *United States v. Pepe*, 81 F.4th 961, 967 (9th Cir. 2023) (*Pepe II*). *Pepe I* does not bind this Court, but its reasoning tracks the statutory text, which controls. *United States v. Pate*, 84 F.4th 1196, 1211 (11th Cir. 2023) ("a criminal statute cannot be expanded beyond the text").

### B. THE 2013 AMENDMENT CONFIRMS THE TEMPORAL LIMIT; READING "TRAVELS" TO REACH PERMANENT RESIDENTS WOULD RENDER THE NEW "RESIDES" CLAUSE SURPLUSAGE.

Congress's 2013 amendment confirms the statute's temporal limit. Amended § 2423(c) now reaches a U.S. citizen "who travels in foreign commerce *or resides, either temporarily or permanently, in a foreign country,* and engages in any illicit sexual conduct with another person." § 2423(c) (2018) (emphasis added). When Congress uses different terms, we expect different meanings, especially where identical meaning would render one term superfluous. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, . . . different terms usually have different meanings.").

To the extent any ambiguity exists, courts must give every word independent effect and presume Congress does not enact surplusage. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *see also Heyman v. Cooper*, 31 F.4th 1315, 1321 (11th Cir. 2022) (courts should avoid readings that cause a provision "to duplicate another provision or to have no consequence"). Courts also presume Congress intended an amendment

"to have real and substantial effect." *Pierce Cnty. v. Guillen*, 537 U.S. 129, 145 (2003).

These canons support Geilenfeld's reading. If the pre-2013 word "travels" already reached every U.S. citizen who had ever crossed a border and thereafter engaged in illicit conduct—no matter how many years had passed or how completely he had settled abroad—then the 2013 addition of "resides, either temporarily or permanently" would have accomplished nothing. The only reading that gives the new clause real work to do is the temporal one—that "travels" reached citizens in the transient phase of travel, and "resides" was added to close the gap for U.S. citizens who had settled abroad.

The government may answer that "resides" does independent work even under a contrary reading—reaching citizens who never traveled in foreign commerce. But that theory is illusory. Virtually every U.S. citizen abroad crossed a border to get there, so if "travels" already reached each of them indefinitely, the class reached only by "resides" would be a practical null set.

The real gap—the one Congress identified—was citizens who, like Geilenfeld, had settled abroad. The Senate Report accompanying the

amendment explained that existing law "only reaches U.S. citizens . . . who travel abroad in foreign commerce," and described the amendment as strengthening the law to reach citizens *"residing outside of the United States."* S. Rep. No. 112-96, at 8 (2011) (emphasis added). This Court "may turn to legislative history as an interpretive aid . . . to elucidate a statute's ambiguous or vague terms." *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1247 (11th Cir. 2008).

The advocacy proposal Congress adopted nearly verbatim made the same point as the Senate Report—that the prior law "only allow[ed] the U.S. government to pursue criminal charges against U.S. citizens . . . who exploit children while traveling in foreign commerce," a phrase that had "been interpreted to mean a brief stay and not include resettlement or intent to stay." *Pepe I*, 895 F.3d at 687. Congress thus legislated against the understanding that the pre-2013 statute did not reach citizens who had settled abroad—precisely Geilenfeld's case.

### C. IN ADDITION TO *PEPE*, THIS COURT'S DECISION IN *FRANK* AND OUT-OF-CIRCUIT CASES SUPPORT GEILENFELD'S READING OF § 2423(C).

In *United States v. Frank*, 599 F.3d 1221 (11th Cir. 2010), this Court described § 2423(c) as a statute that "punishes both traveling and

engaging in illicit sexual conduct." *Id.* at 1239–40. A statute that punishes "both" linked activities, joined by "and," supports—rather than undermines—the conclusion that the two must be connected in time. *Frank* described § 2423(c) as reaching a citizen who has sex with a minor *in the course of the trip*—this Court's own characterization of an offense committed during travel, not years after it ends. *See* 599 F.3d at 1227–28, 1239–40.

*Frank* had no occasion to decide when "traveling" ends, because the defendant there was the quintessential sex tourist—a U.S. resident who made two short trips to Cambodia, paid minors for sex during those trips, and was arrested before returning home. *Id.* at 1227–28. This Court was never asked whether a citizen who had relocated abroad decades earlier remained a "traveler" years into his residence. *Frank* also predates the 2013 amendment and does not implicate the anti-surplusage canon. It therefore does not foreclose the question presented here.

This Court has recently echoed the same distinction in an unpublished decision. In *United States v. Day*, the Court explained that a § 2423(b) offense "is complete as soon as one begins to travel," while a § 2423(c) offense is "not complete until the illicit sexual conduct occurs."

No. 22-11718, 2023 WL 3946830, at *2 (11th Cir. June 12, 2023) (citing *Pepe I*, 895 F.3d at 691). *Day* reflects this Court's recognition that § 2423(c) turns on the timing of the illicit conduct, not merely on a past act of travel.

The Ninth Circuit decisions predating the 2013 amendment that the government may invoke are not to the contrary. *See, e.g., United States v. Jackson*, 480 F.3d 1014, 1022–23 (9th Cir. 2007); *United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006), *superseded by statute, as recognized in Pepe I*, 895 F.3d at 682. *Clark* involved a defendant who had been in Cambodia roughly five years and took annual trips home; the court addressed only a two-month gap between his last return and the charged conduct. 435 F.3d at 1107. *Jackson* read *Clark* to mean travel "can end" while the citizen is still abroad and suggested the statute did not reach citizens who had "permanently resettled." 480 F.3d at 1022–23. *Jackson* supports Geilenfeld's reading.

The court that decided these cases has since held that *Clark*'s construction was "clearly irreconcilable with the plain text of [the 2013] amendment as well as Congress's stated reason for the change." *Pepe I*,

895 F.3d at 688. And neither case held that a decades-long permanent resident satisfies the element.

Other out-of-circuit § 2423(c) decisions involved defendants nothing like Geilenfeld. *United States v. Pendleton*, 658 F.3d 299 (3d Cir. 2011), for example, concerned a defendant who had been in Germany for only six months and did not appear to assert he had resettled there. *Id.* at 301. *Pendleton* did not address the issue raised here, deciding only venue, foreign commerce clause, and due process challenges. *Id.* at 302–11.

In *United States v. Schmidt*, 845 F.3d 153 (4th Cir. 2017), applying the pre-2013 statute, the court held that travel ends upon "permanent resettlement" and that a citizen remains a traveler only while his presence is "sufficiently transient or contemplates some future departure." *Id.* at 157. *Schmidt* found the defendant still a traveler precisely because he had not bought a home abroad, had not begun a foreign citizenship process, and had kept his U.S. assets. *Id.* at 158–59. Geilenfeld is the opposite case on every factor. [redacted]

[redacted] Under *Schmidt*'s framework, Geilenfeld's travel ended decades before the charged conduct.

### D. GEILENFELD'S TRIPS HOME DID NOT "REFRESH" THE ELEMENT—AND THE GOVERNMENT TIED NO CHARGED ACT TO ANY TRIP.

The government may argue that each round trip Geilenfeld made back to Port-au-Prince from Miami "refreshed" the traveling element. That theory fails on both law and proof.

On the law, this theory erases the line Congress drew in the original statute and the 2013 amendment. If a permanent resident's periodic visits to the United States kept him "traveling in foreign commerce" indefinitely, then no expatriate who ever returns here can fall outside the pre-2013 statute—which means the "resides, either temporarily or permanently" clause again does no work. *See TRW*, 534 U.S. at 31.

As a matter of proof, a permanent Haitian resident flying back from a visit to the U.S. is not "traveling" to Haiti; he is going home. *Jackson*, 480 F.3d at 1022 ("a typical conversation would not describe somebody who has changed his primary residence to a foreign country as 'traveling' the entire time he remains outside the country"). *Jackson* identified two

possible endpoints for "travel" under § 2423(c): arrival in the foreign country, or resettlement there. *Id.* at 1023.

Under either *Jackson* definition of when travel ends—arrival, or permanent resettlement—Geilenfeld's travel ended in either 1981 or, at the latest, 1985, decades before the charged conduct. *See id.* at 1022–23. And as *Pepe I* recognized, a § 2423(c) defendant's stay "need not be short . . . but it must be expected to end." 895 F.3d at 685. Geilenfeld's stay in Haiti was never expected to end.

### E. A BROADER READING OF § 2423(C) RAISES A SERIOUS FOREIGN COMMERCE CLAUSE QUESTION—AS APPLIED TO A PERMANENT RESIDENT—THAT THE TEMPORAL READING AVOIDS.

The constitutional avoidance canon reinforces the temporal reading. Under this canon, "[a]mbiguous statutory language [should] be construed to avoid serious constitutional doubts." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009).

The government may respond that courts have already sustained § 2423 against Foreign Commerce Clause challenge. They have—but as a regulation of the *channels* of commerce, meaning *the act of traveling*. For example, in *United States v. Pulido*, 133 F.4th 1256 (11th Cir. 2025),

discussed below in Issue II, this Court rejected a constitutional challenge to § 2423(b) and upheld a conviction because that provision "criminalizes traveling in foreign commerce with an intent to engage in illicit sexual activity" and so regulates "a channel of foreign commerce." 133 F.4th at 1272.

That rationale therefore does not justify allowing § 2423(c) to punish the in-country, non-commercial conduct of a U.S. citizen who settled abroad decades earlier. Stripped of any temporal nexus to our ordinary understanding of "travel," § 2423(c) would no longer regulate a channel of commerce at all; the statute would regulate local conduct inside a foreign nation. That raises precisely the doubt other courts have flagged. *See United States v. Al-Maliki*, 787 F.3d 784, 791 (6th Cir. 2015) (doubting that the Foreign Commerce Clause reaches "a citizen's noncommercial conduct while the citizen resides in a foreign nation"); *Pepe I*, 895 F.3d at 689; *see also Clark*, 435 F.3d at 1116 (statute within the Foreign Commerce Clause power where the illicit commercial sex act occurred *shortly* after the travel). The temporal reading keeps § 2423(c) tethered to the channel of commerce and avoids the constitutional question.

### F. ANY RESIDUAL AMBIGUITY IS RESOLVED IN GEILENFELD'S FAVOR BY THE RULE OF LENITY.

Although the plain text, the 2013 amendment, Congress's own explanation, the canons, and constitutional avoidance resolve this case, the rule of lenity extinguishes any residual doubt. "The tie must go to the defendant." *United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion) (rule of lenity dictates adopting "more defendant-friendly" reading of criminal statute).

Lenity has special force here because § 2423(c) carries up to thirty years' imprisonment and lifetime sex-offender registration yet requires no *mens rea*; "application of the rule of lenity takes on heightened importance when an offense requires no *mens rea* and its potential penalty is so severe." *Pepe I*, 895 F.3d at 688–89. The district court sentenced Geilenfeld to 180 years for the § 2423(c) convictions.

### G. THE UNDISPUTED EVIDENCE ESTABLISHED THAT GEILENFELD WAS A RESIDENT, NOT A TRAVELER, AND THIS COURT SHOULD RENDER JUDGMENTS OF ACQUITTAL ON COUNTS 2–7.

Reading the statute correctly, the government failed to prove that Geilenfeld violated § 2423(c).

[redacted] The conduct charged in Counts 2–7 is alleged to have occurred between 2005 and 2010—[redacted]

*Pepe I* treated even a multi-year residence as raising a question whether the defendant remained a "traveler." 895 F.3d at 691. Geilenfeld's case is far easier. [redacted]. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Second, [redacted]

[redacted]

[redacted]

To find the element on this record, a juror would have had to infer that an episode coincided with travel and then guess which travel—speculation stacked on speculation, not proof beyond a reasonable doubt. *Jackson,* 443 U.S. at 319.

The remedy is not a retrial. Geilenfeld's permanent residence is undisputed—the government's own evidence established his two decades in Haiti before any alleged abuse occurred. There is nothing left to try. The government may note that *Pepe I* vacated and remanded rather than directing an acquittal. But *Pepe I* remanded because residence there was factually disputed—the government contested whether Pepe had resettled in Cambodia, and the district court never resolved the question. 895 F.3d at 691.

Because the government's failure is a failure of proof on the travel ground, the Double Jeopardy Clause bars retrial, and this Court should direct the entry of judgments of acquittal on Counts 2–7. *Burks v. United States*, 437 U.S. 1, 18 (1978).

### H. IN THE ALTERNATIVE, THE DISTRICT COURT'S ERRONEOUS INSTRUCTION ON THE TRAVELING ELEMENT INDEPENDENTLY REQUIRES A NEW TRIAL ON COUNTS 2–7.

If the Court holds the evidence sufficient, the convictions on Counts 2–7 still cannot stand, because the jury was never asked to apply the correct standard. The district court defined "traveling in foreign commerce" as nothing more than "mov[ing] from a place within the

United States to a place outside the United States." (DE134:20). That definition eliminated the temporal element required by the statute and permitted the jury to find the element from the [redacted], without finding that the charged conduct occurred while he was "traveling."

Because no objection was lodged at the charge conference, this Court reviews for plain error. *Olano*, 507 U.S. at 732–34. Geilenfeld can satisfy each prong.

*Error and plainness*. An instruction that relieves the government of proving an element of the offense is error. *Neder v. United States*, 527 U.S. 1, 8–10 (1999). The omission is clear from the statute's text—the present-tense, conjoined "travels . . . and engages." 18 U.S.C. § 2423(c).

The instruction eliminated the temporal element and misdescribed a statutory element. (DE134:20). Geilenfeld acknowledges that an error ordinarily is not plain absent precedent from the Supreme Court or this Court directly resolving the issue. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). But *Lejarde-Rada* states the governing exception. An error is plain where "the explicit language of a statute or rule" specifically resolves the issue. *Id.* at 1291. It does here. The

instruction did not resolve an arguable ambiguity against Geilenfeld; the court deleted the statute's present-tense, conjoined requirement altogether, permitting conviction on proof the text does not allow.

*Substantial rights*. Under a correct instruction there is a reasonable probability of a different result. An instructional error that omits or misdescribes an element is not harmless where the omitted element was contested, and the record would not compel a finding on it. *Neder*, 527 U.S. at 15–19. Geilenfeld carries his burden because he explicitly denied ever abusing anyone, the temporal element was never tried, and the record affirmatively shows the government did not connect any charged act to any qualifying travel. (DE198:142–143, 163). The only travel the government connected to the charged period was Geilenfeld's trips home to Haiti—and no charged act was tied to any specific trip.

The government's own summation kept the two apart. [redacted] and that

[redacted], never connecting a charged act to a specific crossing.

[redacted] A jury properly instructed that the government had to prove the abuse occurred while Geilenfeld was traveling could not have found that element on this record without speculating. *See Rosales-Mireles v. United States*, 585 U.S. 129, 134–35 (2018).

*Fairness and integrity*. Allowing convictions to rest on an element the jury was told could be found from a resident's trips home—an element the statute, correctly read, does not contain—would seriously affect the fairness, integrity, and public reputation of the proceedings. *Id.* At a minimum, the instructional error requires vacatur of Counts 2–7 and a new trial under a correct instruction.

## ISSUE II

**THE DISTRICT COURT PLAINLY ERRED BY GIVING ONLY A GENERAL UNANIMITY INSTRUCTION—RATHER THAN A SPECIFIC UNANIMITY INSTRUCTION OR A REQUIRED GOVERNMENT ELECTION—WHERE COUNT 1 CHARGED A SINGLE § 2423(B) OFFENSE BUT THE GOVERNMENT PROVED EIGHTEEN SEPARATE, INDEPENDENTLY COMPLETED BORDER CROSSINGS, PERMITTING CONVICTION WITHOUT JUROR AGREEMENT ON WHICH CROSSING WAS THE CRIME.**

In Count 1, the grand jury charged Geilenfeld with a violation of 18 U.S.C. § 2423(b) for travel occurring from May 2005 to December 2010. (DE56). Section 2423(b) punishes the act of traveling with an illicit purpose; each trip made with the requisite intent completes a separate offense at the moment the trip occurs. *United States v. Carter*, 776 F.3d 1309, 1322 (11th Cir. 2015). [redacted] Because the government argued these crossings in the aggregate as the basis for Count 1, and the district court gave only a general unanimity instruction, the jury could have

convicted Geilenfeld without agreeing on which trip was the offense. (DE198:209; DE134:24).

Under this Court's cases, however, the district court's failure to give a specific unanimity instruction or require a government election deprived Geilenfeld of jury unanimity on any specific act, denied him fair notice of the crossing he had to defend, and left him without meaningful double-jeopardy protection. That omission was plain error, and his conviction should be vacated and remanded for a new trial.

### A. THE CLAIM ARISES FROM THE GOVERNMENT'S TRIAL PRESENTATION, NOT THE INDICTMENT, AND IS REVIEWED FOR PLAIN ERROR.

Geilenfeld does not contend that Count 1 is facially duplicitous—the count alleges a single span of travel and therefore charges one offense. The duplicity arose only at trial through the government's proof and argument that established multiple discrete, independently completed § 2423(b) offenses. The government may charge and try a case this way, but the court must give a specific unanimity instruction, or require a government election, to guard against a patchwork verdict. *United States v. Gipson*, 553 F.2d 453, 458–59 (5th Cir. 1977); *United States v. Hicks*, 529 F.2d 841, 844 (5th Cir. 1976). Both *Gipson* and *Hicks*

are binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

Geilenfeld had no basis to move to dismiss a facially valid count on the speculation that the government would later prove eighteen offenses in the aggregate. A defect born of the government's trial presentation is remediable only by trial remedies—an election or a specific unanimity instruction—and the court's failure to administer either is instructional error governed by Rules 30(d) and 52(b), not a charging defect governed by Rule 12.

### B. EACH ACT OF TRAVEL UNDERTAKEN WITH AN ILLICIT PURPOSE IS A COMPLETE, SEPARATE § 2423(B) OFFENSE.

To determine whether a count is duplicitous, this Court must first "look to the text of the underlying statute" and ask, "what conduct constitutes a single offense." *Pulido*, 133 F.4th at 1268–70. This doctrine guards against three concrete harms: (1) the jury may convict without unanimously agreeing on the same offense; (2) the defendant may lose double-jeopardy protection in a later prosecution; and (3) the court may be unable to determine the admissibility of evidence tied to a single offense. *Id.*; *In re Gomez*, 830 F.3d 1225, 1227 (11th Cir. 2016); *United*

*States v. Schlei*, 122 F.3d 944, 979 (11th Cir. 1997). Each harm is present here.

Section 2423(b) reaches "a United States citizen . . . who travels in foreign commerce, with the intent of engaging in any illicit sexual conduct with another person." § 2423(b) (2006). The offense is complete the instant the qualifying travel occurs with the requisite intent; the statute requires no sexual contact, no completed scheme, and no result beyond the act of travel. *Carter*, 776 F.3d at 1322; *United States v. Hersh*, 297 F.3d 1233, 1245–46 (11th Cir. 2002); *Day*, 2023 WL 3946830, at *2; *United States v. Glenn*, 839 F. App'x 376, 386 (11th Cir. 2020); *see also Pendleton*, 658 F.3d at 304; *United States v. Bredimus*, 352 F.3d 200, 210 (5th Cir. 2003). The same U.S. Attorney's Office that prosecuted Geilenfeld charged Carter with five § 2423(b) violations alleging specific dates between October 2001 and September 2009. *Carter*, 776 F.3d at 1314.

### C. THE GOVERNMENT PROVED EIGHTEEN DISCRETE TRIPS AND ARGUED THEM IN THE AGGREGATE AS A "DECADES-LONG PROJECT."

[redacted]

[redacted] Under § 2423(b), assuming the requisite intent, each was a separately completed offense.

The government did not isolate the purpose of any single crossing. Instead, in closing, [redacted]

### D. UNDER *PULIDO*, A GENERAL UNANIMITY INSTRUCTION CANNOT SECURE AGREEMENT ON WHICH OF SEVERAL COMPLETED OFFENSES WAS THE CRIME; THE REQUIRED CURE—A SPECIFIC UNANIMITY INSTRUCTION OR A GOVERNMENT ELECTION—WAS NEVER ADMINISTERED.

In *Pulido*, this Court addressed a duplicity issue under an analogous statute, 18 U.S.C. § 2422(b), which criminalizes enticing a minor to engage in sexual activity. A single count charged the defendant with enticing a minor over a ten-month online relationship. *Pulido*, 133 F.4th at 1263. This Court held the count duplicitous: "the moment that *Pulido* was able to move [the victim's] mental state from one of hesitation to one of agreement for the first time, he violated § 2422(b)," and

"[s]ubsequent episodes in which he successfully moved her mind would constitute distinct acts of enticement, and thus independent violations of the statute." *Id.* at 1270–71.

The Court concluded that "[b]y failing to charge multiple enticement counts in a case that involved a 10-month relationship . . . the government produced an indictment that creates the risk that the jury may have convicted *Pulido* without unanimously agreeing on the same offense." *Id.* (citation modified).

Geilenfeld's complaint is stronger. Enticement is a mental result that can be diffuse and hard to date; *Pulido* had to reason about when an elusive change in the victim's state of mind occurred. Travel is a physical act with an objective time stamp, and Government Exhibit 35 fixes each documented crossing to the day. If the enticement count in *Pulido* was duplicitous, a travel count resting on eighteen crossings from Miami to Port-au-Prince is duplicitous.

Whether the resulting duplicity is labeled facial or latent, the operative teaching of *Pulido* is the same. Because each completed trip is an independent violation, a general unanimity instruction cannot secure agreement on which trip was the offense, and the cure is a specific

unanimity instruction or a government election. Geilenfeld seeks a new trial, not dismissal.

Nor may the government recast the eighteen trips as alternative *means* of a single offense. Whether eighteen completed border trips are eighteen offenses or merely alternative means of one turns on the same inquiry *Pulido* resolved. Each qualifying trip independently completes the offense, *Carter*, 776 F.3d at 1322, making each an "independent violation[] of the statute," *Pulido*, 133 F.4th at 1271, a separate offense, not alternative means. *See Schad v. Arizona*, 501 U.S. 624, 631–32 (1991) (plurality opinion) (jurors need not agree on the alternative means of committing a single offense); *Richardson v. United States*, 526 U.S. 813, 817–18 (1999) (jury must agree on each underlying violation that is itself an element, not merely on a brute means).

Section 2423(b) is not a continuing offense. Courts construe the term "continuing offense" narrowly. *Toussie v. United States*, 397 U.S. 112, 115 (1970). To qualify as a continuing offense "the explicit language of the substantive criminal statute [must] compel [] [that] conclusion" or "the nature of the crime involved . . . [must be] such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie*,

397 U.S. at 115; *Pulido*, 133 F.4th at 1270 n.9 ("Offenses should not be considered continuing unless the explicit language of the statute compels such a conclusion."). Nothing in § 2423(b)'s text describes an ongoing course of conduct. The statute punishes "travel[]"—a completed, time-bounded, observable event with a fixed departure and arrival. Treating the trips as "evidence" of one offense merely assumes the continuing-offense conclusion the statute forecloses. *Pulido*, 133 F.4th at 1270 n.9.

The government may invoke the "single scheme" principle that some circuits apply to permit aggregating discrete acts in one count where they form part of a unified plan—the same approach that lets those circuits charge "by the victim" rather than by the discrete offense. That approach is not the law of this Circuit: "two distinct offenses" must be "alleged in a separate and distinct count." *Schlei*, 122 F.3d at 979.

### E. THE GOVERNMENT'S UNDIFFERENTIATED PRESENTATION AND THE COURT'S GENERAL INSTRUCTION DEPRIVED GEILENFELD OF JURY UNANIMITY.

For Geilenfeld, the central harm is the loss of unanimity. Before deliberations, the court gave the jury a general unanimity instruction. (DE134:24: "Your verdict, whether guilty or not guilty, must be

unanimous – in other words, you must all agree."). The jury could have convicted on any one or combination of the eighteen trips without any single trip commanding twelve votes.

*Pulido* rejected the view that a general unanimity instruction cures the risk created when the proof establishes multiple discrete, independently completed offenses under a single count: "The problem isn't that the jury might not have unanimously agreed to the method by which Pulido violated § 2422(b). Rather, the problem is that it might not have unanimously agreed about the moment that [the victim] was enticed." *Pulido*, 133 F.4th at 1271. The same is true here.

The jurors likely all agreed that Geilenfeld "traveled," yet never agreed on which crossing was the crime—the court never instructed them to engage in that inquiry. The government's closing confirmed—rather than dispelled—the risk. [redacted]

That presentation asked the jury to convict on the aggregate course of Geilenfeld's travel and residence in Haiti, not on agreement that a single, identified crossing was undertaken with the requisite purpose. The government's own aggregate theory is what makes the missing specific-unanimity instruction prejudicial. The jurors were invited to converge on guilt without ever converging on the same act of travel.

*Pulido* is directly on point. The government charged him with a single enticement count occurring over a ten-month period. *Pulido*, 133 F.4th at 1270–71. This Court held that multiple acts of enticement over the charged period were distinct offenses. *Id.* The government therefore "produced an indictment that create[d] the risk that the jury may have convicted Pulido without unanimously agreeing on the same offense." *Id.* at 1271 (citation modified). The Court reiterated that this risk is not eliminated by a general unanimity instruction. *See Pulido*, 133 F.4th at 1271; *Schlei*, 122 F.3d at 980.

There is a cure, however, for a latent duplicitous count. The district court should have given a specific unanimity instruction directing the jury to agree on at least one identified act, or a government election among the acts. *See Pulido*, 133 F.4th at 1283 n.2 (Rosenbaum, J.,

concurring) (explaining that had the court instructed the jury to agree unanimously on at least one instance, "[a]ny duplicity would have been harmless"); *see also Schlei*, 122 F.3d at 979–80 (noting absence of an unanimity instruction). Neither cure was administered here. The court's charge required only that the jury's verdict be unanimous; the court never directed the jurors to agree on at least one specific crossing, and the government never elected one. (DE134:24–26; DE132).

The court did require specific unanimity as to the statutory alternative means of committing the offense. The court told the jurors they must "agree unanimously as to th[e] alternative" proved. (DE134:15; DE199:33–34). But the court gave no parallel instruction requiring agreement on which of the eighteen crossings supported the guilty verdict.

That is the precise gap *Pulido* identified. A general unanimity instruction secures agreement on the manner of violating the statute, not on which act was the offense. *Pulido*, 133 F.4th at 1271.

### F. THE ERROR WAS PLAIN, THERE IS A REASONABLE PROBABILITY THAT NO SINGLE TRIP COMMANDED TWELVE VOTES, AND AFFIRMING A CONVICTION FOR AN UNIDENTIFIED OFFENSE WOULD UNDERMINE THE FAIRNESS AND INTEGRITY OF THE PROCEEDINGS.

*Error*. The court's failure to give a specific unanimity instruction or require a government election, once the proof established multiple discrete, independently completed § 2423(b) offenses, was error. *See Pulido*, 133 F.4th at 1270–71; *Gipson*, 553 F.2d at 457; *Hicks*, 529 F.2d at 844; *see also United States v. Lapier*, 796 F.3d 1090, 1097 (9th Cir. 2015) (specific unanimity instruction *required sua sponte* where jurors might convict on different offenses).

*Plainness*. Plainness is measured at the time of appellate review, so an intervening decision can render an error plain even where the law was unsettled at trial. *Henderson v. United States*, 568 U.S. 266, 279 (2013). *Pulido* is that decision. This Court held that each completed violation aggregated within a single count is a separate offense and that a general unanimity instruction does not secure agreement on which one was the crime. *Pulido*, 133 F.4th at 1270–71. And *Pulido*'s holding did not announce a new rule. Nearly fifty years ago, this Court's predecessor held

that the right to a unanimous verdict "requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *Gipson*, 553 F.2d at 457–58.

*Substantial rights*. Geilenfeld must show "a reasonable probability that the jury did not unanimously agree [on a single offense]." *Deason*, 965 F.3d at 1267–68; *United States v. Cannon*, 987 F.3d 924, 950 n.14 (11th Cir. 2021). He can. As shown, the court gave only a general unanimity charge, and the government never elected a specific crossing. (DE134:24–26; DE132).

That is the same general charge *Pulido* held insufficient. *Pulido*, 133 F.4th at 1271. In Count 1, the government presented the jury with eighteen temporally distinct crossings, spread across more than five years, each independently completed, with no finding about any particular trip—the scenario where the court could "only guess which predicate the jury relied on." *In re Gomez*, 830 F.3d at 1226–28. On this record, there is a reasonable probability that the jurors did not converge on the same crossing—that some rested on early-period trips and others on later ones—so that no single § 2423(b) offense commanded unanimous

agreement. And unlike *Cannon*, where a specific unanimity instruction the jury was presumed to follow channeled its verdict, the jury here received only a general charge, which *Pulido* held does not cure the loss of agreement. *Pulido*, 133 F.4th at 1271.

To the extent the government contends the trips were fungible—each independently sufficient—so that the jury necessarily agreed on at least one, the record refutes the premise. As shown in Parts II.C and II.E, [redacted], jurors could have found the requisite purpose as to different trips without agreeing on the same § 2423(b) offense.

*Fairness and integrity.* Jury unanimity is the mechanism by which a guilty verdict earns its legitimacy. Allowing a conviction to stand where the jury was never required to agree on which of the documented acts established guilt seriously affects the fairness, integrity, and public reputation of judicial proceedings. *Rosales-Mireles*, 585 U.S. at 134; *cf.* *Ramos v. Louisiana*, 590 U.S. 83, 90 (2020) (holding the Sixth Amendment requires a unanimous verdict to convict). The government's

bundling presentation also leaves Geilenfeld without meaningful double-jeopardy protection. Because no specific crossing was ever adjudicated, the verdict fixes no act a future court could treat as already prosecuted. The Court should vacate Count 1 and remand for a new trial under a proper unanimity instruction, or a government election. *See Pulido*, 133 F.4th at 1271.

## ISSUE III

**IN A TRIAL THAT TURNED ENTIRELY ON CREDIBILITY, THE DISTRICT COURT'S EVIDENTIARY RULINGS—COMPELLING GEILENFELD TO CALL HIS ACCUSERS LIARS, ADMITTING A BYSTANDER'S BELIEF THAT THE ACCUSATIONS "COULD BE TRUE," AND ADMITTING AN UNCONFRONTED SECONDHAND ACCUSATION—DENIED GEILENFELD A FAIR TRIAL, INDIVIDUALLY AND CUMULATIVELY.**

This was a credibility case. The government offered no physical evidence—no DNA, no medical records, no photographs, and no contemporaneous report to any authority. Every conviction rests on the testimony of accusers—men a single support network paid and housed, relating events purportedly more than a decade old.

The district court's evidentiary rulings resolved the credibility contest in one direction. [redacted]

[redacted] Each ruling was an abuse of discretion, and together they denied Geilenfeld the fair credibility contest the Constitution guarantees.

### A. THE PROSECUTOR'S DEMAND THAT GEILENFELD BRAND HIS ACCUSERS FABRICATORS VIOLATED *SCHMITZ.*

[redacted]

[redacted]

Counsel's objection that the question was "improper" preserved the claim because the impropriety of asking a witness to opine on the veracity of others is apparent from the question, which satisfies Rule 103(a)(1)(B).

This Court has held that "it is improper to ask one witness to comment on the veracity of the testimony of another witness." *United States v. Schmitz*, 634 F.3d 1247, 1268–69 (11th Cir. 2011). Assessing witness credibility is the "sole province of the jury"; a question that conscripts one witness to render a verdict on another's truthfulness usurps that role. *United States v. Henderson*, 409 F.3d 1293, 1298 (11th Cir. 2005). The first question did exactly that. Over objection, the court required Geilenfeld to pronounce on whether the men who accused him were "fabricating." That is a credibility verdict on other witnesses, compelled at the moment his own credibility was the entire case.

The government may argue that because Geilenfeld denied the charges on direct, the question merely tested a defense that necessarily implied the accusers were lying. *Schmitz* forecloses that response. The rule recognizes no "theory of defense" exception, because the defect is not that the defendant has a competing account—every testifying defendant

does—but that the question forces him to pronounce on the veracity of others, which is the jury's task alone. *Henderson*, 409 F.3d at 1298.

The government cannot show harmlessness. When the prosecutor pressed the imputed motive ("Because they want money?"), Geilenfeld gave his actual theory, attributing the accusations to the prospect of United States immigration relief, not money; but that answer does not cure the violation, because the harm was the compelled answer that the witnesses were lying, delivered at the close of the defendant's testimony in the jury's last sustained encounter with him.

In a prosecution with no physical evidence, where the only question was whether to believe the accusers, that error was not harmless. *Kotteakos*, 328 U.S. at 765. It recast the defense as a single, implausible accusation that the men who accused him had committed perjury and steered the jury away from weighing each accuser's credibility against the incentives the defense had documented—[redacted]

Nor were Geilenfeld's direct-examination denials cumulative of the compelled answer: his denials were his own account of events; the

compelled answer was a verdict on whether his accusers had lied—the judgment *Schmitz* reserves to the jury.

### B. CHRISTINE LOW'S OPINION THAT THE ACCUSATIONS "COULD BE TRUE" WAS INADMISSIBLE LAY SPECULATION THAT VOUCHED FOR THE GOVERNMENT'S WITNESSES.

[redacted] That was error.

Low's belief was not made admissible by labeling it "state of mind." Testifying in court, Low offered her own past belief about the truth of the accusations against Geilenfeld—a belief resting on an overheard accusation, not on anything she perceived Geilenfeld do. That is inadmissible lay opinion. It rested on no personal knowledge of any charged act, Fed. R. Evid. 602; it was speculation, not an inference "rationally based on the witness's perception," Fed. R. Evid. 701; and it

usurped the jury's exclusive function of deciding whether the accusers were credible. *Henderson*, 409 F.3d at 1298–99.

Nor does the court's rationale—that Low was explaining why she stayed silent—rescue the testimony. Low's silence needed no explanation; she was not on trial. The only work the statement did before the jury was to tell them that a sympathetic, educated, long-term observer believed the accusations could be true, and whatever marginal relevance her belief had to her own inaction was substantially outweighed by that vouching effect. Fed. R. Evid. 401, 403. [redacted]—was itself an unconfronted, out-of-court accusation that reached the jury as "context."

The statement also directly attacked Geilenfeld's credibility, violating Fed. R. Evid. 608(a), which allows an opinion only about a witness's general character for truthfulness, and only after that character has been attacked. *Henderson*, 409 F.3d at 1299.

The prejudice is acute. Low's belief that the accusations could be true carried exactly the weight a disinterested endorsement carries in a credibility case with no other evidence. The government cannot show the

testimony did not substantially influence the verdict. *Kotteakos*, 328 U.S. at 765.

### C. THE COURT ADMITTED THE "KITCHEN KISS" ACCUSATION UNDER HEARSAY EXCEPTIONS THAT DO NOT FIT.

The court admitted a textbook out-of-court accusation through a declarant who never testified and could not be cross-examined. Outside the jury's presence, [redacted] The court admitted the statement as a present sense impression under Rule 803(1) and an excited utterance under Rule 803(2), [redacted]

Neither exception fits. Rule 803(1) reaches only a statement "describing or explaining an event or condition, made while or

immediately after the declarant perceived it." The exception rests entirely on contemporaneity—the absence of time to reflect, and thus to fabricate. Fed. R. Evid. 803(1) advisory committee's note. The record negates Rule 803(1)'s applicability. [redacted]; [redacted] The government failed to establish contemporaneity.

Rule 803(2) fares no better. An excited utterance must follow a "startling event or condition" and be made while the declarant remains "under the stress of excitement that it caused." Fed. R. Evid. 803(2). The proponent bears the burden of establishing both prerequisites, and the government established neither. Witnessing one person kiss another is not, without more, the kind of shocking occurrence that stills the capacity for reflection. *See United States v. Starr*, 159 F.4th 901, 908 (11th Cir. 2025).

[redacted]

That cannot carry Rule 803(2). The exception turns on an objectively startling event, not a declarant's subjective agitation, and excitement cannot supply a startling occurrence the event itself lacks.

[redacted] That interval defeats both the contemporaneity Rule 803(1) requires and the unbroken stress Rule 803(2) demands. Nor could the statement supply its own foundation. The government's contemporaneity showing reduced to the word "just" inside the accusation itself—bootstrapping the hearsay to prove the conditions of its own admissibility.

The error was not harmless. [redacted]

[redacted] The government cannot show that the statement did not substantially influence the verdict. *Kotteakos*, 328 U.S. at 765.

### D. THE CUMULATIVE EFFECT OF THESE RULINGS DENIED GEILENFELD A FAIR TRIAL.

Even if no single ruling requires reversal, their combined effect does. "An aggregation of non-reversible errors . . . can yield a denial of the constitutional right to a fair trial, which calls for reversal." *Baker*, 432 F.3d at 1223. This Court considers each claim individually, then examines any errors in the aggregate, in light of the trial as a whole. *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). The doctrine has particular force where the errors are directionally uniform—

where they consistently favor one side on the dispositive issue. *United States v. Hands*, 184 F.3d 1322, 1334–35 (11th Cir. 1999).

[redacted]

[redacted]

Geilenfeld does not assert this as a freestanding error. The district court admitted the expert testimony, and a prosecutor may argue reasonable inferences from the evidence. The point bears only on harmlessness. In a prosecution with no physical evidence and nothing but credibility to decide, this framework supplied the interpretive lens through which the jury heard everything else—including the testimony the district court should not have allowed. The compelled pronouncement that the accusers were "fabricating" (Part III.A), Christine Low's endorsement that the accusations "could be true" (Part III.B), and the witnesses' repeated assertions of Geilenfeld's private intent did not land on a neutral jury weighing raw credibility; they landed on a jury already invited to read ambiguity as guilt. Each error reinforced, and was reinforced by, the very inference the expert framework licensed.

The pattern is present here. Nearly every contested ruling amplified the government's credibility narrative and constrained the defense's. [redacted]

[redacted], *see* *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006). That accumulation was not harmless.

The government may answer that the accusers corroborated one another. Two responses. [redacted]

Second, the jury watched these same accusers impeach themselves. [redacted]

[redacted]

[redacted]—were not harmless, and the government cannot carry its *Kotteakos* burden of showing otherwise. The convictions should be vacated and the case remanded for a new trial.

## CONCLUSION

For the foregoing reasons, this Court should direct the entry of judgments of acquittal on Counts 2–7, or, in the alternative, vacate the convictions on Counts 2–7 and remand for a new trial. This Court should also vacate the conviction on Count 1 and remand for a new trial. Regardless of this Court's decision on Issues I and II, this Court should vacate all convictions and remand for a new trial.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*Michael Caruso*
MICHAEL CARUSO
Assistant Federal Public Defender
Attorney for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
(305) 533-4200

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 12,966 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface in Century Schoolbook 14-point font.

*/s/ Michael Caruso*
Michael Caruso

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 27th day of July 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day via CM/ECF on George Doty, III, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*/s/ Michael Caruso*
Michael Caruso